**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| KATHERINE BROWN )<br>)<br>Plaintiff, )<br>)     Case No.<br>v. )<br>)<br>STATE FARM MUTUAL AUTOMOBILE )<br>INSURANCE COMPANY )<br>)<br>Defendant. ) | |

## COMPLAINT

Plaintiff Katherine Brown, by and through her attorneys, Hart McLaughlin & Eldridge, LLC, and Ben Crump Law, states as follows for her Complaint against State Farm Mutual Automobile Insurance Company ("State Farm"):

## INTRODUCTION

1. Katherine Brown is an African American woman who applied to, and accepted, a position with State Farm with the hope that she would have enjoyed a long career.

2. After joining State Farm in 2020, Katherine Brown confronted State Farm's culture of racism, discrimination, and harassment which continued until she was compelled to involuntarily resign.

3. On or around February 24, 2020, Katherine Brown began working as an Investment Plan Service Representative in State Farm's Investment Planning Services ("IPS") Department at State Farm's Richardson, Texas office (hereinafter

referred to as "Richardson IPS"), where she experienced racial harassment and discrimination from three different supervisors.

4. Beginning in February of 2020, Katherine Brown noticed that her supervisors would not fully depict her successes in her performance reviews leading to her lack of growth and advancement at State Farm, would offer comments that she was not "fit for State Farm," and was written up and reprimanded for no reason.

5. After raising her concerns about her supervisors to management on multiple occasions with her manager(s) harassing worse than the previous one, she was forced to involuntarily resign on February 19, 2022.

## JURISDICTION AND VENUE

6. On March 02, 2022, Katherine Brown filed a Charge of Discrimination with the Unites States Equal Employment Opportunity Commission ("E.E.O.C.").

7. In April of 2022, State Farm submitted its position statement to the EEOC.

8. In July of 2023, Katherine Brown emailed the E.E.O.C. to request an update on the status of her Right to Sue Letter.

9. A Notice of Right to Sue letter was received by Katherine Brown that was signed by the District Director of the E.E.O.C. on July 26, 2023.

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this action involved federal questions regarding the deprivation of Plaintiff's rights under 42 U.S.C. § 2000e and 42 U.S.C. § 1981.

11. This Court has personal jurisdiction over the Defendant because the Defendant has its principal place of business within this jurisdiction.

12. Venue is proper in this jurisdiction under 42 U.S.C. § 2000e-5(f)(3) because Defendant's unlawful employment practice was committed in this judicial district, and the employment records relevant to their unlawful practices are maintained and administered in this judicial district. Alternatively, Defendant's principal office is within this judicial district.

13. The Central District of Illinois has held that it is a proper venue for employee actions against State Farm. *See Calvin Fluker, III v. State Farm Mutual Automobile Insurance Company*, Case No. 22-cv-1207, ECF No. 12; *Nakita Miles v. State Farm Mutual Automobile Insurance Company*, Case No. 22-1229, ECF No. 12.

## PARTIES

14. Katherine Brown is an African American woman, and a former employee of State Farm.

15. At all relevant times, Katherine Brown was employed by State Farm in the Richardson, Texas office.

16. State Farm is a large group of insurance companies throughout the United States, with its corporate headquarters in Bloomington, Illinois, in the Central District of Illinois.

17. Defendant's headquarters and principal office in Bloomington, Illinois maintains and administers relevant employment records, including individual employee employment records, manager employment records, employee handbooks,

discrimination and harassment policies, and discrimination and harassment investigation materials.

18. State Farm is an employer as defined by Title VII of the Civil Rights Act of 1964 and was, at all relevant times to this complaint, Katherine Brown's employer.

## BACKGROUND

19. On or around February of 2020, Katherine Brown began her employment with State Farm as an Investment Plan Service Representative in the Investment Planning Services Department.

20. Through her tenure at State Farm, Katherine Brown was responsible for a number of key tasks from assisting State Farm's agents with their telephone inquiries and service requests, developing best practices and sharing them with her team, to training Supervisor Joselyn on IDS and her coworkers.

21. From the date that she was hired through her constructive discharge, Katherine Brown's job performance was consistently complimented and lauded by her supervisors and peers.

22. In November of 2020, a director at State Farm emailed Katherine Brown to tell her that in her 15 years at State Farm, she has "never seen as many KUDOS emails about one person's impact on so many" and she referred to Katherine Brown as "one of a kind."

23. For the year 2020, Katherine Brown was awarded a 4/5 in her annual performance review.

24. On February 04, 2021, Katherine Brown was awarded a "Good Act Award."

25. In March of 2021, a State Farm agent emailed one of Katherine Brown's supervisors to inform her that Katherine Brown provided "Five Star Service."

26. In July of 2021, Katherine Brown was awarded with a second "A Good Act Award."

27. For the 2021 year, Katherine Brown received another stellar rating of 4/5 for her performance during the year.

28. In January of 2022, in an effort to continue her career growth at State Farm, Katherine Brown purchased study materials with the goal of obtaining her Securities Industry Essentials (SIE) security license.

29. Despite consistent career accolades and the desire to improve her position at State Farm, her supervisors consistently put her down and harassed her because she was black.

30. Over the course of her career at State Farm, Katherine Brown learned that, "if an employee is black, they are kept back" – a commonly discussed reality for black State Farm employees.

31. For example, State Farm selected Joselyn Casa Chavarria (who was Mexican) to be the supervisor in her department, despite having no experience, as opposed to a black employee who worked in the department and sought career growth.

32. On another occasion, a black employee was falsely accused of violating one of State Farm's policies and procedures. Katherine Brown defended this employee, leading a State Farm Account Manager to remark that Katherine Brown prevented this other employee from getting fired.

33. Katherine Brown was subjected to discrimination, harassment, and a hostile work environment by Supervisor Joselyn and then Supervisor Jeremy Baier (who was white).

34. During her first one on one meeting with Supervisor Joselyn, in May of 2021, Supervisor Joselyn admitted to Katherine Brown that Supervisor Joselyn was promoted to her current role without the relevant security license and without the requisite knowledge of the IPS department.

35. As such, Supervisor Joselyn requested that Katherine Brown provide Supervisor Joselyn with any background knowledge and training needed for her new position. Consistent with Katherine Brown's reputation as an exemplary employee, she agreed.

36. Throughout Supervisor Joselyn's time as Katherine Brown's supervisor, Supervisor Joselyn failed to accurately document Katherine Brown's performance reviews.

37. When Katherine Brown reported her concerns to superiors, Supervisor Joselyn would retaliate and reprimand Katherine Brown through hurtful language, including telling her that none of the leaders like her.

38. In July of 2021, Supervisor Joselyn told Katherine Brown that other leaders at State Farm directed Supervisor Joselyn to manufacture criticisms relating to Katherine Brown's performance.

39. Supervisor Joselyn further admitted that there was no basis in fact for these criticisms.

40. In that same month, Supervisor Joselyn also informed Katherine Brown that "State Farm is different," and that "it would be good for [Katherine Brown] to find another place to fit in," suggesting that Katherine Brown did not fit in because she was black.

41. Supervisor Joselyn further informed Katherine Brown that she would not be considered for any temporary work assignments or promotions.

42. In August of 2021, Supervisor Joselyn again informed Katherine Brown that she needed to find reasons to criticize Katherine Brown's work performance.

43. Supervisor Joselyn did not similarly manufacture work performance criticisms towards non-black coworkers.

44. In September of 2021, Supervisor Joselyn informed Katherine Brown that another supervisor directed Supervisor Joselyn to criticize Katherine Brown's handling of escalation calls from State Farm agents. As shown by Katherine Brown's exemplary annual reviews, this criticism was unfair and without any supporting evidence.

45. Despite all of this, Katherine Brown continued to provide exemplary performance to those State Farm agents that relied on her and trained Supervisor

Joselyn on the IPS Department. Nonetheless, Katherine Brown was experiencing the sad reality of working at State Farm: "if you are black, they hold you back."

46. In October of 2021, Supervisor Joselyn sent her personal resume to Katherine Brown's personal email. In that email, Supervisor Joselyn told Katherine Brown that she could get some tips on her resume from it and encouraged Katherine Brown to find a new job.

47. In that same month, Katherine Brown reported to her manager, director, and HR staff members that she was experiencing a hostile and toxic work environment due to Supervisor Joselyn.

48. In October of 2021, the director of the department dismissed Katherine Brown's concerns.

49. Following that report, Supervisor Joselyn increased the harassment and discrimination against Katherine Brown.

50. In November of 2021, Supervisor Joselyn criticized Katherine Brown about a call that she had with an agent, despite that same agent sending Katherine Brown an email that she provided remarkable feedback.

51. In that same month, Katherine Brown requested a confidential Open Door meeting with her manager and director pursuant to State Farm's policies and procedures, despite those policies and procedures, her request for confidentiality were denied.

52. Supervisor Joselyn reminded Katherine Brown that "you will not get a temporary work assignment or a promotion, and you can tell the director, manager, HR that too."

53. On November 12, 2021, Katherine Brown once again sent an email to Supervisor Joselyn and her director, that she was enduring a tremendous amount of stress, suffering, and torment at work.

54. On November 16, 2021, in complete disregard to Katherine Brown's repeated complaints and requests for help, one of the human resource employees emailed Katherine Brown a link for "The Growth Mindset."

55. The Growth Mindset provided suggestions such as dealing with discomfort, making adjustments by looking at a problem in different ways, and using positive self-talk. This was another example of State Farm disregarding the concerns of their black employees and Katherine Brown.

56. In December of 2021, Supervisor Joselyn presented Katherine Brown with an inaccurate annual review evaluation and told her to sign it.

57. Katherine Brown raised numerous examples of missing information, such as her completed assignments, training of coworkers, and her metrics, but Supervisor Joselyn said she added them at the end in the notes section and it was too late to amend it.

58. Katherine Brown signed the annual review under undue pressure.

59. In January of 2022, Katherine Brown reviewed her annual review and Supervisor Joselyn's notes. Katherine Brown learned that Supervisor Joselyn did not include *any* of Katherine Brown's achievements.

60. Based on these actions and inactions by State Farm supervisors, managers, and directors, it was clear that no one supported Katherine Brown or cared about the harassment and discrimination she was suffering from.

61. On January 11, 2022, Katherine Brown was informed that she would be transferred to Supervisor Jeremey's team.

62. On February 07, 2022, Supervisor Jeremy criticized Katherine Brown for a call even though the involved agent provided Katherine Brown with remarkable feedback. Despite that feedback, Supervisor Jeremy wrote her up for her performance.

63. As a direct result of that write up, Katherine Brown was told she would no longer be considered for a temporary work assignment, promotions, transferred to a different department, and that she had no option to receive benefits for education towards improving her career.

64. As a direct result of Supervisor Joselyn's and Supervisor Jeremy's abuse of authority and discrimination, Katherine Brown was prevented from developing, exceling, and advancing her career.

65. On February 18, 2022, as a direct result of the objectively intolerable working conditions, harassment, racial discrimination, and hostile work environment, Katherine Brown resigned.

66. Katherine Brown's resignation constituted a constructive discharge from State Farm.

67. Katherine Brown has suffered significant monetary loss, emotional distress and mental anguish as a result of State Farm's discriminatory, harassing, and retaliatory conduct.

## COUNT 1
## Title VII, 42 U.S.C. § 2000(e), et seq.
## Discrimination, Harassment, and Hostile Work Environment Claim

68. Each of the foregoing paragraphs are incorporated herein as if fully restated.

69. As an African American, Katherine Brown is a member of a protected class.

70. As described above, State Farm's conduct towards Katherine Brown was discriminatory and occurred because of and based upon her race.

71. State Farm's conduct occurred over months, constituting a continuing course of discrimination towards Plaintiff.

72. State Farm committed an unlawful employment practice by treating Katherine Brown differently because of her race, causing a change in the condition of her employment and subjecting her to a hostile work environment.

73. Katherine Brown was subjected to a racially discriminatory environment that was both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that Plaintiff in fact did perceive to be so.

74. State Farm's conduct had the purpose or effect of unreasonably interfering with Katherine Brown's work performance.

75. State Farm's conduct had the purpose or effect of creating an intimidating and hostile work environment.

76. State Farm's actions permeated the workplace with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive and regular to alter the conditions of Katherine Brown's employment and create an abusive working environment.

77. State Farm's discriminatory conduct created a hostile work environment for Katherine Brown.

78. Katherine Brown was subjected to a racially discriminatory and hostile work environment that was both objectively and subjectively offensive.

79. State Farm was aware of the racially discriminatory and hostile work environment and failed to remedy these working conditions.

80. State Farm's racist and discriminatory conduct included the adverse employment action of Katherine Brown's constructive discharge from her position.

81. State Farm willfully and intentionally subjected Katherine Brown to racial discrimination.

82. State Farm knew its actions violated Title VII or it was recklessly indifferent in that regard.

83. Defendant State Farm has therefore denied Plaintiff her rights under the Civil Rights Act of 1964 and he has suffered damages as a direct result of her rights being violated.

84. As a direct and proximate result of the foregoing, Katherine Brown has suffered, and will continue to suffer, damages including, but not limited to, loss of front and back wages, earnings, benefits, insurance premiums, emotional distress, and other damages to be determined at trial. Katherine Brown claims compensatory and punitive damages for these losses and injuries under § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

## COUNT II
**Civil Rights Act of 1866, 42 U.S.C. § 1981**
**Intentional Racial Discrimination and Hostile Work Environment**

85. Each of the foregoing paragraphs are incorporated herein as if fully restated.

86. As described above, State Farm's conduct towards Katherine Brown was discriminatory and occurred because of and based upon her race.

87. State Farm willfully and intentionally subjected Katherine Brown to racial discrimination.

88. State Farm knew its actions violated Section 1981 of the Civil Rights Act of 1866 or it was recklessly indifferent in that regard.

89. Defendant has therefore denied Plaintiff her rights under Section 1981 of the Civil Rights Act of 1866 and she has suffered damages as a direct result of his rights being violated.

90. As a direct and proximate result of the foregoing, Katherine Brown has suffered, and will continue to suffer, damages including, but not limited to, loss of front and back wages, earnings, benefits, insurance premiums, emotional distress, and other damages to be determined at trial. Katherine Brown claims compensatory and punitive damages for these losses and injuries under § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

## COUNT III
### Violation of Texas Labor Code
### Tex. Labor Code Ann. § 21.051
### Discrimination

91. Each of the foregoing paragraphs are incorporated herein as if fully restated.

92. As an African American, Katherine Brown is a member of a protected class.

93. As described above, State Farm's conduct towards Katherine Brown was discriminatory and occurred because of and based upon her race.

94. Katherine Brown suffered adverse employment actions, namely a write up and constructive discharge, as a result of his race.

95. State Farm willfully and intentionally subjected Katherine Brown to racial discrimination.

96. State Farm knew its actions violated Section 21.051 of the Texas Labor Code or it was recklessly indifferent in that regard.

97. Defendant has therefore denied Plaintiff his rights under the Texas Labor Code and he has suffered damages as a direct result of his rights being violated.

98. As a direct and proximate result of the foregoing, Katherine Brown has suffered, and will continue to suffer, damages including, but not limited to, loss of front and back wages, earnings, benefits, insurance premiums, emotional distress, and other damages to be determined at trial. Plaintiff claims special damages, economic damages, and attorneys' fees and costs as permitted by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Katherine Brown, by and through her attorneys, Hart McLaughlin & Eldridge, LLC, and Ben Crump Law, respectfully requests that the Court enter an Order granting the following relief against the Defendant, State Farm Mutual Automobile Insurance Company:

A. Awarding Plaintiff actual damages;

B. Awarding Plaintiff lost wages;

C. Awarding Plaintiff damages for her emotional distress;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff his reasonable attorneys' fees and litigation costs; and

F. Awarding such other and further relied as the Court deems reasonable and just.

## **JURY DEMAND**

Plaintiff demands a trial by jury in this action on each and every one of his claims.

Dated: October 23, 2023

Respectfully Submitted,

/s/ Robert J. McLaughlin, Esq.

Robert J. McLaughlin, Esq. #6272701
Charles R. Vogt, Esq. #6321671
**Hart McLaughlin & Eldridge, LLC**
One South Dearborn Street, Suite 1400
Chicago, Illinois 60603
Tel:  (312) 955-0545
rmclaughlin@hmelegal.com
cvogt@hmelegal.com

Benjamin Crump,
FL Bar #72583
**BEN CRUMP LAW**
122 S. Calhoun Street
Tallahassee, Florida 32301
Tel: (800) 713-1222
ben@bencrump.com